IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 21-5040-01-CR-SW-SRB |
| CHRISTIAN SINCLAIR, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Stephanie L. Wan, Assistant United States Attorney, and the defendant, Christian Sinclair ("the defendant"), represented by Michelle Moulder.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the indictment, charging him with a violation of 18 U.S.C. § 2251, that is, sexual

exploitation of children. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

Beginning on an unknown date, but as early as August 1, 2020, and continuing through June 15, 2021, said dates being approximate, in Barton County, in the Western District of Missouri, the defendant, **CHRISTIAN SINCLAIR**, employed, used, persuaded, induced, and enticed, a minor, Jane Doe, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, all in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

On June 15, 2021, Officer Michael Comparoni, of the Sierra Vista, Arizona, Police Department (SVPD), took a report from Captain Eric Cooley, of the Kansas National Guard. Captain Cooley reported that he was deployed to Arizona with the Kansas National Guard. Captain Cooley had received information that one of the soldiers in his command, Christian SINCLAIR, was "sexting" an 11-year-old child.

Captain Cooley stated, on the morning of June 15, 2021, that he was contacted by M.K., SINCLAIR's fiancée, who was living in Kansas. M.K. reported that she had screenshots between herself and SINCLAIR where SINCLAIR admitted to "cheating" on M.K. with an 11-year-old.

Officer Comparoni contacted the Lamar, Missouri, Police Department (LPD) to inform that agency about the investigation.

On June 15, 2021, LPD Officer Toby Luce was able to determine that Jane Doe's father was K.D. Officer Luce contacted K.D. and arranged to meet him. At that time, K.D. stated that he had taken Jane Doe's phone away on the previous day because he found out she was sending Snapchats. K.D. said that Jane Doe used multiple screennames on Snapchat.

Later, on June 15, 2021, K.D. came to the LPD station and reported that he had spoken to Jane Doe. Jane Doe told K.D. that the person she was chatting with, that was the basis of this investigation, was Christian SINCLAIR. Jane Doe also told K.D. that she had sent SINCLAIR nude images at SINCLAIR's request.

On June 16, 2021, LPD Officer Steven Shaw contacted K.D. At that time, K.D. said that SINCLAIR messaged K.D. on Facebook to apologize about what he had done.

The Facebook messages show that they came from "Christian Sinclair" who works for "The United States Army and works at Army National Guard of the United States." The messages read:

| | |
|---|---|
| **SINCLAIR:** | "Hey [K.D.]" |
| K.D.: | "Seriously i don't know why in the hell you are messaging me" |
| **SINCLAIR:** | **"I just wanted to personally apologize to you I know what I did was wrong I don't know why I did it I just know once I realized how stupid I was being I stopped but I can never change what I did and for that I'm truly sorry"** |
| K.D.: | "Its all out of my hands idk what to tell you" |
| K.D.: | "Why in the fuck would u ask my 12 yr old daughter for nudes" |
| **SINCLAIR:** | **"I don't know why I did it just after realizing what I was doing I stopped doing it"** |
| K.D.: | "Yeah u stopped asking for nudes but you kept on talking to her afterwards . . . |
| K.D.: | So the best thing to do right now is just stop messaging me |

On June 16, 2021, Officer Shaw contacted Federal Bureau of Investigation (FBI) Task Force Officer (TFO) Chip Root. At that time, TFO Chip Root agreed to take over the case.

On June 22, 2021, TFO Root contacted M.K. At that time, M.K. explained that she was going through SINCLAIR's Facebook account and found a Facebook Messenger conversation between SINCLAIR and another girl. M.K. said the messages were sexual in nature, and she became very upset. She confronted SINCLAIR, who admitted what he had done and stated that he had no excuse. After talking to SINCLAIR's mother, M.K. learned the girl that SINCLAIR was talking to on Facebook Messenger was an 11-year-old from Missouri.

On June 23, 2021, M.K. provided four documents, three of which were screenshots of text messages between M.K. and SINCLAIR and the fourth being screenshots of text messages between SINCLAIR and Jane Doe.

In the conversations between SINCLAIR and M.K., SINCLAIR admits to messaging and cheating on M.K. with a "11 year old."

The Facebook Messenger screenshot shows a conversation between Jane Doe and SINCLAIR's account that occurred on June 3, 2021, and read as follow

| | |
|---|---|
| **SINCLAIR:** | **"Your wanting to fool around"** |
| Jane Doe: | "Some ya" |
| **SINCLAIR:** | **"Lol ok I'll reinstall it"** |

On June 28, 2021, Jane Doe was interviewed at the Joplin Children's Center, in Joplin, Missouri. During the interview, Jane Doe stated that she knew she was at the Children's Center because of an incident on the phone with a military person that she identified as, Christian SINCLAIR.

Jane Doe met SINCLAIR approximately a year prior, when she was staying with her sister in Fort Scott, Kansas. Jane Doe was 11 years old at that time. Jane Doe stated that she sent SINCLAIR a Facebook Messenger chat asking him how he was doing. SINCLAIR and Jane Doe chatted back and forth a bit, before SINCLAIR told her to switch to Snapchat.

Jane Doe stated that SINCLAR asked for specific images of her, beginning in the fall of 2020, when Jane Doe was 11 years old. SINCLAIR would ask for photographs of specific body parts, and she complied. Jane Doe sent images showing her breasts, vagina, and her buttocks. SINCLAIR asked for these pictures on multiple occasions, and they were all sent via Snapchat. The first time she sent images, Jane Doe sent images of her buttocks, breasts, and vagina. Jane Doe was in Lamar, Missouri, when she sent the images.

When asked if SINCLAIR made any comments about the images she sent him, Jane Doe said he stated that she should not know anything about this type of thing because she is so young.

On June 28, 2021, TFO Root interviewed K.D. who confirmed that K.D. and Jane Doe had been living in Barton County, Western District of Missouri, since November 2020.

On July 8, 2021, TFO Root interviewed SINCLAIR at the Neosho, Kansas, Sheriff's Office (NCSO), where SINCLAIR was being held in custody on the Chanute, Kansas, warrant. Prior to being asked guilt-seeking questions, SINCLAIR was read his *Miranda* rights. He signed a waiver of rights form and agreed to speak to the officers.

When asked if he knew why the investigators were there to speak with him, SINCLAIR said it was because he was talking to a minor. He stated that he was talking on the phone with Jane Doe.

SINCLAIR deployed to Arizona in October 2020, and was in Arizona when he was contacted by Jane Doe, via Facebook Messenger. This occurred shortly after Thanksgiving 2020. The conversation began by Jane Doe asking SINCLAIR how he was doing. Jane Doe asked him if he was on Snapchat, and SINCLAIR provided his Snapchat username.

SINCLAIR admitted that he asked Jane Doe to send him nude images of herself, and that Jane Doe complied with request. He also admitted to sending Jane Doe images of his semi-erect penis. SINCLAIR admitted that he received a video of Jane Doe where she got undressed until she was entirely nude. Her breasts and/or vagina was visible in the videos. He described the videos as being "short" and Jane Doe's face was visible. He admitted that he asked Jane Doe to masturbate in the videos and Jane Doe complied. During the interview, SINCLAIR also admitted that Jane Doe was 11 years old when he first started talking to her.

On August 18, 2021, TFO Root obtained federal search warrants for SINCLAIR's and Jane Doe's Facebook accounts and Snapchat accounts.

On August 24, 2021, TFO Root received the results of the Snapchat search warrants. He reviewed the search warrant results and found the chat conversations between Jane Doe and SINCLAIR including ones where SINCLAIR is requesting sexually explicit images from Jane Doe, as well as the sexually explicit images of Jane Doe that Jane Doe sent SINCLAIR. In reviewing the images that Jane Doe sent SINCLAIR, TFO Root determined that the images depicted a minor engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256.

TFO Root confirmed that the images sent by Jane Doe to SINCLAIR were produced using materials that had been mailed, shipped, and/or transported through interstate commerce. In addition, Facebook, Snapchat, and Instagram used the internet to function.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the indictment, charging him with sexual exploitation of children, the minimum penalty the Court may impose is not less than 15 years' imprisonment, while the maximum penalty the Court may impose is not more than 30 years' imprisonment, not less than 5 years', or life, supervised release, a $250,000 fine, an order of restitution, a $5,000 Justice for Victims of Trafficking Act special assessment, and a $100 mandatory special assessment per felony count of

Page **5** of **17**

Case 3:21-cr-05040-SRB   Document 26   Filed 03/02/22   Page 5 of 17

conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not less than 5 years', or life, supervised release;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 3 years without credit for time previously spent on supervised release; however, if Court revokes the supervised release because the defendant committed a criminal offense under chapter 109A, 110 (child pornography offenses), or 117, or section 1201 or 1591 of Title 18 of the United States Code, the law may allow the Court to impose a period of imprisonment of five (5) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot be less than 5 years', or life, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

Page **6** of **17**

Case 3:21-cr-05040-SRB   Document 26   Filed 03/02/22   Page 6 of 17

  h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

  7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to sexual exploitation of children for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count 2, transfer of obscene matter to a minor, at sentencing.

  The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

  The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

      a.      The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

      b.      The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2G2.1;

      c.      There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the applicable enhancements after receipt of the presentence investigation report prepared by the United States Probation Office and after the parties have had an opportunity to be heard on the applicable enhancements;

      d.      The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

      e.      The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

      f.      The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

      g.      The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a

sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The Government agrees that it will not recommend a sentence that exceeds 240 months. The agreement by the Government not to seek a sentence that exceeds 240 months is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

    h.    The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

    i.    The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11.    **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12.    **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to

void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the information;

    c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.    oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a.    the right to plead not guilty and to persist in a plea of not guilty;

    b.    the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c.    the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d.    the right to confront and cross-examine the witnesses who testify against him;

    e.    the right to compel or subpoena witnesses to appear on his behalf; and

  f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

  a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

  b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3)

hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

    i.  In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States

will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **Sex Offender Registration.** The defendant acknowledges that he has been advised, and understands that, by pleading guilty to the instant offense, he will be required under the Sex Offender Registration and Notification Act (SORNA), a federal law, to register as a sex offender and keep the registration current in each of the following jurisdictions: where he resides; where he is employed; and where he is a student. The defendant also acknowledges that he

understands that the requirements for registration include providing his name, his residential address, the names and addresses of any places whereshe is, or will be, an employee or student, or any other relevant information. The defendant further acknowledges that he understands that the requirement to keep the registration current includes registering in the jurisdiction in which he resides, is an employee, or is a student, and must be done within 72 hours of any such change in status. The defendant also agrees that he will provide his Probation Officer proof of registration within 72 hours of release from imprisonment, and abide by all state and federal sex offender registration laws, as well as abiding by all of his Probation Officer's directives.

The defendant acknowledges that he has been advised, and understands, that failure to comply with these obligations could subject him to either state or federal prosecution for failure to register, pursuant to Title 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

Page **16** of **17**

Case 3:21-cr-05040-SRB   Document 26   Filed 03/02/22   Page 16 of 17

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Teresa A. Moore
United States Attorney

By: *[signature]*

Dated: 3·2·2022

**Stephanie L. Wan**
Assistant United States Attorney
Missouri Bar No. 58918

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 3/2/22

*[signature]*

**Christian Sinclair**
Defendant

I am defendant Christian Sinclair's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Christian Sinclair's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 3/2/22

*[signature]*

**Michelle Moulder**
Attorney for Defendant